408 P.2d 186

**Marinda DAY, Plaintiff and Appellant,**

**v.**

**LORENZO SMITH & SON, INC., a Utah corporation, Joseph Ivy Mitchell, Defendants and Respondents.**

**No. 10256.**

Supreme Court of Utah.

Nov. 26, 1965.

5. See Kent v. Industrial Commission, 89 Utah 381, 57 P.2d 724; and Kavalinakis v. Industrial Commission, 67 Utah 174, 246 P. 698.

Wilford A. Beesley, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, Stephen B. Nebeker, Salt Lake City, for respondents.

CALLISTER, Justice.

A personal injury action arising out of a collision between two motor vehicles. The lower court, based upon the jury's answers to special interrogatories, entered a judgment of no cause of action. Plaintiff appeals and presents this court with only one question: Did the lower court commit prejudicial error in permitting a highway patrolman to give his opinion as to the point of impact?

. The accident occurred on a straight stretch of U. S. Highway 91, about four miles north of Nephi, Utah. Plaintiff was a passenger in a pick-up truck being driven in a northerly direction on the east side of

the highway by one Roberts. It sideswiped with a small truck belonging to defendant and operated by its employee. Defendant's truck was travelling in a southerly direction on the west side of the highway. The highway at this point is two lane, the lanes being separated by a white strip of paint.

The crucial factual question was which vehicle was in the wrong lane. Four disinterested eye witnesses testified at the trial. Two placed the defendant's truck in the wrong (east) lane and two placed the Roberts' vehicle in the wrong (west) lane at time of impact.

Eldon Sherwood, a Utah highway patrolman with 24 years experience of accident investigation, was at the scene investigating another accident, when the instant collision occurred. However, his back was to the highway and he did not see the actual impact. He heard the noise and turned around in time to see the Roberts vehicle careen down the highway and roll over.

Although there is authority to the contrary, we believe the proper rule to be that a trial judge, in his discretion, may permit a qualified expert (in this case an experienced highway patrolman) to give his opinion as to the point of collision *when a proper foundation for the opinion has been laid.* This is subject to a caveat, however: The opinion should not be admitted if it is based upon the same evidence as is available to the jury, and a layman of ordinary intelligence can equally determine what happened.[1]

Plaintiff's argument, that Sherwood's opinion was upon the very issue to be decided by the jury, and thus an invasion of its province, is without merit. In Joseph v. W. H. Groves Latter-Day Saints Hospital,[2] Mr. Justice Crockett, speaking for a majority of this court, stated:

"* * * This objection is untenable. Whether the testimony of an expert is as to 'the very issue before the jury' is not a proper test as to its admissibility. Where the subject of inquiry is in a field beyond the knowledge generally possessed by laymen, one properly qualified therein may be permitted to testify to his opinion as an expert. If the opinion evidence is such that it will aid the jury in understanding their problems and lead them to the truth as to disputed issues of fact, it is competent and admissable, irrespective of whether it bears directly upon the ultimate fact the jury is to determine.[3] And the trial judge is allowed a wide discretion in regard to the allowance of such testimony."

Thus, the opinion testimony of patrolman Sherwood was properly admitted if it

---

1. 66 A.L.R.2d pp. 1057 and 1065.
2. 7 Utah 2d 39, 318 P.2d 330 (1957).

3. See the concurring opinion of Mr. Justice Wade, Hooper v. General Motors Corp., 123 Utah 515, 260 P.2d 549 (1953).

aided the jury in determining a factual issue which they, as laymen, could not ordinarily resolve. However, this brings us to the crux of the case. Without a proper foundation having been laid, it is impossible for this court to decide whether or not Sherwood's testimony was properly admissable. In this respect, plaintiff's contention is well-founded.

Sherwood's qualification as an expert in accident investigations is not challenged. However, the record does not disclose a proper foundation to support his opinion testimony as to the point of impact. He did not see the actual impact, therefore his opinion had to be based upon facts derived from his investigation.[4]

Sherwood was called as a witness for the plaintiff and, upon direct examination, testified as follows:

Q. (Mr. Beesley) I see. Now, were there any objective signs whatsoever to determine the point of collision?

A. No.

Mr. Nebeker: I will object to that your Honor. I think he can state what he saw and let the jury decide.

The Court: Well, since he says no, I guess we don't have to pursue it further.

Upon cross-examination, Sherwood was not permitted to give his "opinion" as to the point of impact, but, over objection, was allowed to state his "judgment" thereof.[5] He placed the point of collision one or two feet to the west of the centerline of the highway.

As previously stated, Sherwood did not see the actual collision, but did observe the movements of the Roberts' vehicle immediately afterwards. Upon direct examination, he testified to the skid marks laid down by the Roberts truck and drew them on the blackboard. Upon cross-examination, Sherwood testified as follows with relation to the point of collision:

Q. (Mr. Nebeker) I see. Now you did examine the roadway where these two vehicles had collided, did you not?

A. Yes.

Q. And you found that there was considerable debris on the road there, did you not?

4. Sheriff Jackson, who preceded Sherwood as a witness, also investigated the accident. He testified as to the physical evidence observed, but was precluded from stating his opinion as to the point of collision.

5. From the record, it is difficult to ascertain the lower court's differentiation between "opinion" and "judgment." Usually, the two words are used under these circumstances, in a synonymical sense. 29 Words and Phrases, p. 595. Perhaps the trial judge was attempting to determine if the patrolman's testimony was based upon a belief or impression obtained from a source other than physical facts or personal observation.

A. Well, I wouldn't know about the considerable amount, but there was debris.[6]

Q. From your examination of the road, you made a determination as to the approximate point of impact, did you not?

A. Yes.

Q. Was that point of impact on the east or the west side of the road?

A. It was near the centerline, and my best opinion, it may have been * * *

Mr. Beesley: I will object to any opinion, your Honor.

The Court: Well, you may give your judgment. If you are giving us an opinion, he would be right. If you mean by your opinion your best judgment as to what you judge it would be, I think you might proceed, Sergeant, and I don't quite know—

Q. Give us your judgment.

Mr. Beesley: Make the same objection, your Honor.

The Court: Let's find out if he has a judgment or giving an opinion. If he is giving an opinion, he can't.

Q. Do you have a judgment as to where the point of impact occurred?

A. Yes.

Q. Will you tell us what that judgment is?

Mr. Beesley: Objection, your Honor.

The Court: It's overruled. He may give his judgment.

A. As near the centerline and probably a little bit west.

Mr. Beesley: I object to any probability, your Honor.

The Court: If you are confining it to your judgment—

Q. Just give us your best judgment.

The Court: You can tell us your judgment.

Mr. Beesley: I believe he said the centerline.

A. Near the centerline.

Q. Was it on the west or the east of the centerline?

A. Do I have to answer that "Yes" or "No?"

Q. Yes.

A. My opinion is no good?

Q. Just give us your judgment.

The Court: You can give our judgment, Sergeant.

A. My judgment, slightly to the west of the centerline.

Q. Would you say it was about a foot to the west of the centerline?

---

6. The witness did not point out the location of the debris and it is not indicated in any of the exhibits.

A. I think that would be a fair figure.

Q. It could have been a little further west? It could have been a little further east?

A. Yes.

■ An expert or skilled witness can give an opinion upon facts previously testified to by him, but not on facts known to him but not communicated to the jury. The witness must testify as to the facts upon which he bases his opinion and the facts should be related to the opinion. Otherwise, the testimony would be of little assistance to the court and jury, and there would be no way of testing the validity of the opinion.[7]

■■ Opinion testimony, such as Sherwood's, is admissible only when the subject matter is such that a jury cannot be expected to draw correct inferences from the facts. There is no need for expert opinion with reference to facts involving commonplace occurrences. Expert testimony is not admissible solely because the witness has some skill in a particular field, but is admissible, if at all, only because the witness can offer assistance on a matter not within the knowledge or common experience of people of ordinary intelligence.[8]

■ Applying the foregoing principles to the instant case, we hold that it was error to permit Sherwood's testimony as to the point of impact because his opinion was not supported by sufficient facts and, what meager facts he did testify to were not connected up or related to his opinion. They were inadequate to support his conclusion.

■ Was this error prejudicial? Yes. The point of impact was an important fact, if not a controlling one, to be determined by the jury in reaching its verdict. The lay eye witnesses differed in their testimony as to which side of the road the vehicles were on when they collided. It is only fair to assume that a jury would be impressed by and give considerable weight to the testimony of a patrolman with 24 years of experience in accident investigations. There is a reasonable likelihood that in the absence of such testimony the jury might have reached a different result.[9]

Reversed and remanded for a new trial. Costs to plaintiff.

McDONOUGH, CROCKETT and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent, because: 1) The 66 A.L.R.2d 1057 and 1065 references made by the main opinion, in my opinion, do not reflect the consensus of opinion of most of the cited cases; and 2) that the main opinion says

---

7. Xenakis v. Garrett Freight Lines, 1 Utah 2d 299, 265 P.2d 1007 (1954).

8. McNelley. v. Smith, 149 Colo. 177, 368 P.2d 555 (1962).

9. Joseph v. W. H. Groves Latter-Day Saints Hospital, supra, N. 2.

that because a peace officer of 24 years experience in checking and investigating accidents was not experienced enough to state his opinion as to where the impact occurred so as to make his opinion inadmissible, because no proper foundation was laid to determine his expertise, seems somewhat naive when nobody questioned his qualification, no one having requested to voir dire him or question such qualifications; and 3) that if there were error in admitting such testimony, I doubt its prejudiciality under the circumstances of this case.

The A.L.R. citation generally approves the doctrine that in similar cases, the matter of admissibility is one for the sound discretion of the trial court. The colloquy between court and counsel about "opinion" or "judgment" seems unimportant, although I can see a distinction of sorts, in light of the basic reason given by the main opinion that no foundation had been laid for the officer's testimony as an expert. I have difficulty in saying that the officer's opinion would have been admissible under the facts of this particular case if he had been grilled for hours as to his qualifications, but finally was shown to be qualified, but inadmissible if a discerning advocate, sensing the very decision of this case, did not voir dire the witness,—thus inviting error, which the main opinion now says occurred prejudicially, and which the main opinion also now opines that an expert witness must remain a deaf-mute if the opposition advisedly does not question his qualifications, thus assuring a reversal in the event of defeat. It is submitted this 24-year experience alone established his qualifications as an expert unless successfully discounted by voir dire examination or cross-examination.