STATE of Utah, Plaintiff and Respondent,

v.

Emery Dean BECK, Defendant and Appellant.

No. 15412.

Supreme Court of Utah.

Sept. 11, 1978.

Steven W. Allred, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, Robert W. Adkins, Summit County Atty., Coalville, for plaintiff and respondent.

PER CURIAM:

Defendant Beck appeals from a plea of guilty to second degree murder, and a sentence of five years to life as a consequence thereof, for violating Title 76–5–203, Utah Code Annotated, 1953, as amended, relating to the slaying of a peace officer. He pleaded guilty to the charge after having been tried for First Degree Murder before a hung jury, apparently on a plea bargain basis. His appeal here asked that his sentence be vacated and that he have a trial, not on the the First Degree but on the Second Degree Murder charge.

He presents seven points on appeal, discussed below:

■ I. That he was entitled to a preliminary examination before a law trained judge instead of a layman Justice of the Peace, as was the case here, which offended against his federal constitutional rights (Art. V of the U.S. Constitution) and his state constitutional rights (Art. I, Sec. 7, Utah Constitution).

He points to Title 78–5–4 of the Code to reflect a trend toward requiring judges generally to be members of the Bar,—the section cited requiring a legally trained judge, *if* 1) the Justice of the Peace has jurisdiction of the offense and 2) authority to impose a jail sentence and 3) *if* the accused demands a hearing before a law trained judge. By some sort of analogy, Beck says the rule should apply to "preliminary-examinations" in felony or other cases where statutorily the Justice of the Peace may conduct such hearings, but has no jurisdiction to try the case in the first instance. Jurisdiction is lodged in the District Court, if the Justice of the Peace finds probable cause to bind the accused over to the District Court for trial. Beck does not say specifically why his constitutional rights have been fractured by the preliminary hearing process, but it is quite obvious that it is a claim of denial of "due process," whatever that might be. He cites no authority except some observations in a case not in point,—*Shelmidine v. Jones,* Utah, 550 P.2d 207 (1975),—and there is nothing presented in his brief to indicate that there was any "undue process" in this case.[1] Any further elaboration as to the length or breadth of the due process clause seems unnecessary statutorily or casewise under the facts of this case.

■ II. That the statement of the peace officer who obtained the warrant to arrest Beck, to the effect that "The defendant, Emery Dean Beck, has been identified as the murderer . . . by witnesses and by the defendant's own admission" was insufficient under the IV Amendment to justify a finding of probable cause.

It would appear that such a statement, under oath by a peace officer, was amply sufficient for issuance of an arrest warrant. Even if it weren't it would only be effective perhaps in a habeas corpus situation, for the release of an accused from a protracted detention,[2] but certainly would not immunize him from a murder prosecution. In

1. *Kinsella v. U. S.,* 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960).

2. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974).

this regard, his cited authorities are inapropos. The "probable cause" required for a warrant of arrest, if lacking, may prevent the introduction of unlawfully seized evidence at the trial, but it does not prevent the trial and conviction of the defendant.[3] By a plea of guilty the defendant waived any claim of error on behalf of the officer in saying that he had been identified as the murderer.

■ III. That the court erred in not granting Beck's motion to dismiss at the conclusion of the trial, on the grounds of insufficiency of the evidence.

This point is without merit, since there was no trial and defendant pleaded guilty to Second Degree Murder. There is therefore nothing to review. Beck is referring to the First Degree Murder case where there was a hung jury,—a different case. Besides, this Court has no evidence to review, since there is no transcript of the evidence even if the First Degree matter could be considered reviewable on this appeal since no transcript was requested, prepared or filed in this Court.

■ IV. The court erred in refusing to hear defendant's post-sentence motion to amend the sentence which ran consecutively with others.

The motion was made on August 15, 1977. Beck was sentenced and committed on August 4, 1977, eleven days earlier, in the following language: ".    .    .  that the defendant be, and he is hereby sentenced .    . [and]   .    .    .  is committed to the custody of the Division of Corrections of the Utah State Prison, to be incarcerated, kept, and confined in accordance with the judgment and order of this court."

Beck leans heavily on two cases authored by Mr. Justice Maughan (*State v. Garfield*, Utah, 552 P.2d 129, 1976, and *State v. Sop-*

er, Utah, 559 P.2d 951, 1977) to support his thesis that the trial court can change the sentence *after* commitment to prison. Neither supports his theory. Both have to do with motions *before* commitment, which is proper, if timely made and which was the case in both. In *Soper*, the law properly is enunciated to the effect that a sentence is a final judgment subject to modification by convincing proof of error, which motion is addressed to the sound discretion of the trial court, the language significantly being restricted to "sentence," without any reference to a situation, as maintains here, where the accused has been "committed." The State's claim that the trial court lost jurisdiction to change the sentence after commitment seems to be well taken and supported by respectable authority.[4]

■ V. The court erred in imposing consecutive sentences.

Beck relies on Title 76–3–401(2) of the Code to urge that the court in a consecutive sentence situation is duty bound to "consider the gravity and circumstances of the offenses." The court complied, ordering a diagnostic report before sentence, and although it is not in the record, Beck did not show that it did not indicate other than that it led the court to consider the gravity of the offenses and it must, therefore be presumed that the court did what the statute proscribed. This, strengthened with the substantive rule of discretion on the part of the court to determine concurrent or consecutive sentencing, dispels any claim of error by defendant.

■ VI. The possibility of the death penalty influencing plea bargaining is a constitutional denial of free choice.

This point on appeal seems to be of little or no merit under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274;

---

**3.** *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbee v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952).

**4.** *State v. Frye*, 209 Kan. 520, 496 P.2d 1403; *State v. Porter*, 143 Mont. 528, 391 P.2d 704; *Baker v. State*, Okl.Cr., 295 P.2d 294; *Parks v. Amrine*, 154 Kan. 168, 117 P.2d 586:

When a valid judgment and sentence has been rendered in a criminal case, the court has no authority after the sentence imposed has been served, in whole or in part, to set it aside and hear additional evidence and impose a new sentence, even though this be done at the same term of court.

*Brady v. U. S.*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, restricting *U. S. v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 and *No. Car. v. Alford*, 400 U.S. 30, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), all saying that where the defendant makes a voluntary and intelligent plea of guilty he cannot use a claim of fear of punishment as defense against some other punishment. Beck made such a voluntary, intelligent plea here.

VII. Sec. 76–5–202(1)(e) violates Art. I, Sec. 24 of the Utah Constitution, in that it provides a greater punishment for killing a peace officer than killing a private citizen.

There is no merit to this Point of Appeal either: because this defendant could not be adversely affected by it. He did not plead guilty to killing a policeman, but to killing a private citizen, and hence he has no standing to litigate the contention he now attempts to pursue.

The judgment of the lower court is affirmed.

CROCKETT, MAUGHAN and WILKINS, JJ., concur in result.