STATE of Utah, Plaintiff and
Respondent,

v.

David Bruce GEER, Defendant
and Appellant.

No. 880055–CA.

Court of Appeals of Utah.

Nov. 29, 1988.

Martin V. Gravis (argued), Ogden, for
defendant and appellant.

David L. Wilkinson, Atty. Gen., Barbara Berenson, Asst. Atty. Gen. (argued), for the State.

Before GARFF, BILLINGS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

David Bruce Geer appeals from his conviction of bigamy, a third degree felony, in violation of Utah Code Ann. § 76–7–101 (1978), claiming that he was selectively prosecuted and that an inventory search of his luggage violated his fourth amendment rights. We affirm.

On about November 2, 1987, Geer's wife, Colleen Edwards, contacted the Organized Crime Bureau and spoke to Sergeant Mann. She reported that Geer possessed a number of credit cards that bore the names of other women and did not appear to be his, that he had been making calls to dating services, and that he traveled extensively but had no obvious source of income. Sergeant Mann discovered, through the National Crime Information computer, that Geer was wanted in Missouri on an outstanding felony warrant for fraud. The fraud charges stemmed from returned checks, written on the account of David Bruce Geer and Deborah Syverson Geer. Colleen Edwards informed Sergeant Mann that Geer was scheduled to arrive at the Salt Lake International Airport on the night of November 14.

On November 14, 1987, Sergeant Mann met Geer at the airport and arrested him on the Missouri felony warrant. Sergeant Mann advised Geer that the luggage he was carrying at the time of arrest, including a briefcase, camera bag and garment bag, would have to be inventoried and stored in the Organized Crime Bureau's office, rather than the Salt Lake County jail, because of a jail policy prohibiting storage of large items belonging to an arrested person. Geer asked to be present during the inventory search and, consequently, was taken to the Organized Crime Bureau's office where his luggage was inventoried. During the search of Geer's briefcase, Sergeant Mann found a checkbook with the names David Bruce Geer and Deborah Syversen Geer printed on the checks. Sergeant Mann asked Geer how to contact Deborah Syverson Geer. Geer showed Mann his address book containing her name and address. After the inventory search, Geer's luggage was stored, and Geer was booked into the Salt Lake County jail.

Subsequently, Sergeant Mann contacted Deborah Syversen Geer and learned that Geer was married to her at the time he married Colleen Edwards. On November 16, Sergeant Mann received two telephone messages from Geer and, in response, went to the jail to talk to him. Geer told Mann that he had been married thirteen times and was not certain if he was married at the time he married Colleen Edwards in September 1987. Geer also told Mann he was not involved in any divorce proceedings.

On November 17, 1987, Geer was charged with one count of bigamy in violation of Utah Code Ann. § 76–7–101 (1978) and one count of falsification of government records. Geer filed a motion to dismiss, claiming that he was selectively prosecuted, and a motion to suppress all his statements and all physical evidence discovered after he was stopped at the airport. The court denied both the motion to dismiss and the motion to exclude Geer's confession. The court further found that the initial stop was valid and that the inventory and storage of Geer's luggage was proper. Geer entered a guilty plea on the bigamy charge, conditional upon his right to appeal the denial of the motion to dismiss and the motion to suppress. This appeal ensued.

## CONDITIONAL PLEA

■ Preliminarily, we address the State's claim that Geer waived his right to appeal the trial court's denial of his motion to suppress and motion to dismiss by entering a conditional guilty plea. In *State v. Sery*, 758 P.2d 935, 938 (Utah Ct.App.1988), this Court held that entry of a conditional no-contest plea, which the prosecution and

the defendant agreed to and the trial court accepted, did not preclude the defendant from raising fourth amendment issues on appeal. *Sery* further noted that conditional guilty pleas should be treated the same as conditional no-contest pleas, to allow preservation of the ability to appeal. *Id.* at 939. In this case, as in *Sery*, the prosecution and Geer agreed to the guilty plea and the court accepted the plea. In addition, like *Sery*, the guilty plea expressly reserved the right to appeal the denial of the motion to suppress and the motion to dismiss. Therefore, we hold that Geer's conditional guilty plea preserved his ability to appeal the trial court's denial of his motions.

## SELECTIVE PROSECUTION

We next consider Geer's allegation that the prosecutor selectively enforced the bigamy statute and thereby violated Geer's constitutional rights under the equal protection clause of the United States Constitution.[1] Prosecutors are given broad discretion in determining whether to prosecute. *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). As long as the prosecutor has probable cause to believe that an offense has been committed, the decision regarding whether to prosecute "generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Although selective prosecution claims are assessed according to "ordinary equal protection standards," the decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte*, 470 U.S. at 608, 105 S.Ct. at 1531.

■ The elements of a prima facie case under an equal protection claim were discussed in *Castaneda v. Partida*, 430 U.S. 482, 494–95, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). In *Castaneda*, the defendant claimed that the Texas grand jury selection process resulted in a disproportionately low number of Mexican–Americans serving on such juries. The United States Supreme Court found that a prima facie case had been made by the defendant, thus requiring the State to rebut the defendant's showing of discrimination. The prima facie case consisted of identifying the group to which the defendant belonged and demonstrating that the identified group was treated disparately under the laws as written or applied. *Id.* at 495, 97 S.Ct. at 1280. In the context of selective prosecution claims, in order to establish a prima facie case, thus shifting the burden to the State, the defendant must demonstrate that a prosecutorial policy results in a discriminatory effect, based on an unlawful classification. *Wayte*, 470 U.S. at 608, 105 S.Ct. at 1531.

■ Geer claims that the State selectively prosecutes only those bigamists who practice bigamy for other than religious reasons. Having so claimed, Geer had the burden of establishing that the State has a prosecutorial policy in regard to bigamists which produces an unlawful discriminatory effect. The only competent evidence Geer submitted to support his claim was an affidavit of Robert W. Adkins, county attorney in Summit County, Utah. Adkins' affidavit states that he has never been requested by law enforcement officers or others to file bigamy charges, except against Geer. Adkins further states that at the time the criminal charges were filed against Geer, he did not know whether Geer's practice of marrying more than one woman at a time was based on religious convictions and that such information would be irrelevant to him in deciding whether to charge a violation of the bigamy statute. Adkins also stated that he always has been and continues to be willing to prosecute persons under the bigamy statute regardless of whether those persons claim a religious basis for that practice and that his decision to prosecute is based solely on whether there is sufficient evidence to convict the person of bigamy.

*See State v. Ashe*, 745 P.2d 1255, 1257 n. 2 (Utah 1987).

---

1. Geer's brief does not urge a different result under the Utah Constitution, therefore, we confine our analysis to the federal constitution.

Geer failed to establish that the State has a discriminatory policy or that there is a discriminatory result. On the contrary, Adkins' affidavit demonstrates that as a prosecutor he bases his decision to prosecute on whether there is sufficient evidence to convict the person of bigamy and further, that Geer was not treated any differently from any other bigamist. Therefore, because Geer failed to meet his burden of proof, we hold that the trial court did not err in denying the motion to dismiss.

## INVENTORY SEARCH AND CONFESSION

■ We next address Geer's contention that the inventory search of his luggage violated his fourth amendment rights and that the confession, which he claims was obtained as a result of that search, should have been suppressed. Inventory searches are a well-known exception to the requirement that searches must be conducted pursuant to a search warrant. *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983). It is not unreasonable for police to search any container or article in an arrested person's possession as part of established inventory procedures incident to incarcerating an arrested person. *Id.* at 648, 103 S.Ct. at 2610. The inventory process protects the owner's property from theft and the police against false accusations of theft. *Id.* at 646, 103 S.Ct. at 2609. In addition, inventorying the owner's possessions inhibits theft or careless handling of the owner's articles, and prevents the arrested person from using his possessions to injure himself or others while incarcerated. *Id.; see Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987).

In *Lafayette*, the Court, in addressing the propriety of an inventory search at a police station, found that the search was reasonable. In *Lafayette*, police arrested a person for disturbing the peace and conducted an inventory search of his shoulder bag at the police station. In determining that the search of the shoulder bag was reasonable, the Court concluded that the search served the legitimate governmental

interests of protecting both the owner's property and the police, and that those interests outweighed the individual's fourth amendment rights. *Lafayette*, 462 U.S. at 646–48, 103 S.Ct. at 2609–10. The *Lafayette* Court rejected the argument that the State's legitimate governmental interests could have been met by sealing the shoulder bag in a plastic bag or box and placing it in a secured locker, stating:

> Even if less intrusive means existed of protecting some particular property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit.

*Id.* The Court then applied these principles and held that "it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Id.*

■ In this case, Geer was arrested under an undisputedly valid felony warrant. According to Mann, Geer could not take his luggage to the jail because the jail would not accept large items and requires the arresting agency to store such items. Consequently, following Geer's arrest, Mann inventoried Geer's luggage before placing it in storage. Geer contends that the inventory search was unnecessary because the luggage could have been placed in a locker at the Salt Lake International Airport or given to Colleen Edwards rather than placing it in storage at the Organized Crime Bureau's office. However, as in *Lafayette*, we reject that contention because even if less intrusive means existed of protecting property, it would be unreasonable to require police officers to determine such less intrusive means. In addition, in the present case, there was no showing that, in conducting the inventory, the police "acted in bad faith or for the sole purpose of investigation." *Bertine*, 107 S.Ct. at 742. Therefore, because Geer was validly arrested on a felony warrant and an inventory search was conducted as part of the routine procedure incident to his arrest, we hold

that the inventory search of his luggage did not violate his fourth amendment rights. In so holding, we also affirm denial of the motion to exclude Geer's confession, as Geer claimed only that the confession was obtained as a result of an illegal inventory search.

AFFIRMED.

GARFF and BILLINGS, JJ., concur.