STATE of Utah, Plaintiff and Appellee,

v.

Joseph Mitchell PARSONS, Defendant
and Appellant.

No. 880102.

Supreme Court of Utah.

Oct. 13, 1989.
Rehearing Denied Jan. 22, 1990.

James L. Shumate, Cedar City, for defendant and appellant.

R. Paul Van Dam, Dan R. Larsen, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Upon a plea of guilty, defendant Joseph Mitchell Parsons was convicted of murder in the first degree, a capital offense in violation of Utah Code Ann. § 76–5–202 (1978, Supp.1989). A sentencing proceeding was conducted under section 76–3–207 (1978, Supp.1989), and a jury unanimously imposed the death penalty. Defendant appeals his conviction and sentence.

In the late afternoon of August 30, 1987, defendant was hitchhiking on Interstate–15 near Barstow, California. The victim, Richard L. Ernest, stopped and offered him a ride. While defendant's ultimate destination was Florida, Ernest agreed to take him as far as Denver, Colorado. Earlier that day, Ernest had left his home in Loma Linda, California, to seek a job opportunity and a new environment in Denver. He was traveling alone with a carful of personal belongings and carpentry tools.

At approximately 3:00 the next morning, Ernest drove his car into the Lunt Park rest area on Interstate–15 near Cedar City, Utah. He said that he was too tired to continue driving, and he wanted to get some sleep. He remained in the driver's seat of the car and covered himself with a

sleeping bag, while defendant rested his head against the passenger window and door in an attempt to sleep. According to defendant's testimony, Ernest reached over and put his hand on his thigh. Defendant pushed the hand away, stated "that's not my style," and requested that Ernest leave him alone. When Ernest again put his hand on defendant's thigh, he pushed the hand away and reached for the door when Ernest grabbed his left wrist and said, "You're not going anywhere." Defendant then pulled a five-inch double-edged knife from his sock and stabbed Ernest in the chest. Allegedly, a struggle ensued wherein Ernest received several more knife wounds. Eventually, defendant moved into the driver's seat and drove away from the rest area.

After traveling about a mile, defendant pulled the car to the shoulder of the highway, pushed Ernest's body out of the car, covered it with a sleeping bag, and drove another five miles to Beaver, Utah, where he stopped at a service station and convenience store. There, he changed his clothes and washed the victim's blood from himself and from inside the car, emptied the personal belongings and carpentry tools into a dumpster, and assuming the identity of Ernest, purchased food and gas with Ernest's credit card. He then drove to Richfield, Utah, where he again used the victim's money and credit cards to stay in a motel, cleaned his clothes at a laundromat, visited an optometrist for prescription lenses, and attempted to purchase several items, including carseat covers from a store.

Law enforcement officers had since discovered the victim's dead body alongside the highway and had also been alerted to the credit card transactions and unusual activities of defendant in Beaver and Richfield. At approximately 4:15 p.m. on August 31, defendant, while resting in the victim's car at the Red Creek rest area on Interstate–70, was arrested by a Utah Highway Patrol Officer and taken into custody. He was subsequently charged with murder in the first degree under Utah Code Ann. § 76–5–202 (1978, Supp.1989), aggravated robbery under section 76–6–302

(1978, Supp.1988) (amended, Supp.1989), and theft of an operable motor vehicle under section 76–6–404 (1978).

On September 18, 1987, defendant pleaded guilty to all three counts. Specifically, in regard to the first degree murder charge, he pleaded guilty to the offense as defined in section 76–5–202(1)(h) (having intentionally or knowingly caused the death of another when having been previously convicted of a felony involving the use or threat of violence to a person). He elected to have a jury determine his sentence, and the death penalty was imposed.

I.

Defendant initially contends that the first degree murder statute under which he was charged and convicted is unconstitutional. In part, section 76–5–202(1)(h) provides:

(1) Criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under any of the following circumstances:

. . . .

(h) The actor was previously convicted of ... a felony involving the use or threat of violence to a person.

First, defendant argues that the statute violates constitutional protections against double jeopardy by utilizing a previous conviction as a circumstance to elevate noncapital murder to a capital offense. Second, he argues that the statute denies him due process and the right to a fair trial by an impartial jury by allowing highly prejudicial evidence of his prior felony conviction to come before the jury during the guilt phase of trial. U.S. Const. amends. V, XIV; Utah Const. art. I, §§ 7, 12.

As to his double jeopardy argument, we recently held in *State v. Holland*, 777 P.2d 1019, 1023 (Utah 1989), that for the reasons there stated, section 76–5–202(1)(h) does not violate the double jeopardy clause of the federal constitution. As to his second argument, the Supreme Court of the United States has ruled:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea....

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973).

■ The general rule applicable in criminal proceedings, and the cases are legion, is that by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects, including alleged pre-plea constitutional violations. *United States v. Lopez*, 704 F.2d 1382, 1385 n. 3 (5th Cir.), *cert. denied*, 464 U.S. 935, 104, S.Ct. 341, 78 L.Ed.2d 309 (1983); *United States v. DePoli*, 628 F.2d 779, 780–81 (2d Cir.1980); *United States v. Doyle*, 348 F.2d 715, 718 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); *State v. Moreno*, 134 Ariz. 199, 200, 655 P.2d 23, 24 (Ct.App.1982); *State v. Sery*, 758 P.2d 935, 938 (Utah Ct.App.1988). We followed this general rule in *State v. Beck*, 584 P.2d 870, 872 (Utah 1978), where we held that the defendant, by his plea of guilty to second degree murder, waived any claim of constitutional error regarding probable cause and search and seizure principles.

Some courts recognize exceptions to this general rule by allowing a defendant to challenge the validity of a conviction and sentence or the constitutionality of a statute on appeal if the issue was specifically reserved for appeal at the time the guilty plea was entered and the plea was conditional upon appellate determination. *See State v. Sery*, 758 P.2d 935, 938 (Utah Ct.App.1988); *State v. Geer*, 765 P.2d 1, 2–3 (Utah Ct.App.1988), *cert. denied*, 773 P.2d 45 (Utah 1989); *see also United States v. DePoli*, 628 F.2d 779, 780–81 (2d Cir.1980). *But see People v. Pharr*, 696 P.2d 235, 236 (Colo.1984) ("Permitting a defendant to plead guilty and to reserve the right to test the constitutionality of a statute is not recognized by either rule or statute, and we specifically disapprove the procedure."). We need not consider this exception in the instant case, however, because defendant's guilty plea was unconditionally entered without limitations. He moved for a sentence of life imprisonment at the sentencing proceeding and again after the death verdict was returned on the ground that the statute was unconstitutional, but he failed to attack the constitutionality of the statute prior to his plea or to conditionally plea and preserve the issue for appeal.

■ Defendant does not attack the voluntary and intelligent character of his unconditional guilty plea to capital murder. It is clear from the record that great care was taken to ascertain the voluntariness of his plea. We cannot now recognize his efforts to vacate his conviction or sentence by raising independent issues attacking the constitutionality of section 76–5–202(1)(h) on the assertion that he would not have received a fair trial by an impartial jury. We stated in *State v. Yeck*, 566 P.2d 1248, 1249 (Utah 1977), "The right to a jury trial is constitutionally guaranteed but it may be waived, and when no issue is raised as to innocence, there is nothing to try. Once a plea of guilty is knowingly and voluntarily entered, there are no issues for trial." Because defendant's conviction is based on the guilty plea rather than on evidence which defendant alleges would have unconstitutionally come before the jury during the guilt phase of a trial, he can only challenge the validity of the plea itself. One cannot voluntarily waive his right to trial and then seek relief on grounds that the trial, if it had occurred, may have been constitutionally flawed.

## II.

The remaining issues raised by defendant concern alleged defects in the sentencing proceeding conducted under section 76–3–207 after the guilty plea and subsequent convictions were entered. He requests

that this Court vacate his death sentence and order a sentence of life imprisonment.

Defendant asserts that the jury was misled to conclude that it could find only aggravating circumstances and no mitigating circumstances in determining his sentence. Specifically, he argues that the lower court misled the jury by giving special verdict instructions and questions on aggravating circumstances while only generally instructing on mitigating circumstances, the result being that the jury could only conclude that the aggravating factors which were specifically found outweighed any mitigating factors. He further argues that this Court should prohibit special verdicts in capital sentencing proceedings or, in the alternative, require special verdicts on both aggravating and mitigating circumstances.

The appropriate standard to be followed by the sentencing authority in a capital case was explained in *State v. Wood*, 648 P.2d 71, 83–85 (Utah), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982), requiring the authority to find beyond a reasonable doubt that total aggravation outweighs total mitigation and that imposition of the death penalty is justified and appropriate in the circumstances:

> These standards require that the sentencing body compare the totality of the mitigating [factors] against the totality of the aggravating factors, not in terms of the relative numbers of the aggravating and the mitigating factors, but in terms of their respective substantiality and persuasiveness. Basically, what the sentencing authority must decide is how compelling or persuasive the totality of the mitigating factors are when compared against the totality of the aggravating factors. The sentencing body, in making the judgment that aggravating factors "outweigh," or are more compelling than, the mitigating factors, must have no reasonable doubt as to that conclusion, and as to the additional conclusion that the death penalty is justified and appropriate after considering all the circumstances.

*Wood*, 648 P.2d at 83–84.

In the instant case, these standards were clearly and correctly enunciated to the jury in instructions 12 and 13. In addition, instruction 14 specifically listed aggravating and mitigating factors which could be considered by the jury. The list of mitigating factors was taken directly from section 76–3–207(2). The aggravating factors were whether defendant intentionally or knowingly caused the death of Richard L. Ernest (1) while engaged in the commission of or an attempt to commit, or flight after committing or attempting to commit aggravated robbery, and/or (2) for pecuniary gain, and/or (3) having previously been convicted of a felony involving the use or threat of violence to a person. Instruction 18 allowed the jury to determine whether, as an aggravating circumstance in addition to those listed above, defendant was a person on parole who knowingly possessed or had a firearm in his custody or under his control. The court also gave other general instructions concerning aggravating and mitigating circumstances.

The basis of the alleged error stems from instruction 27. There, the court instructed the jury that it would prepare two verdict forms and "three Special Verdict Questions, which will aid in your deliberations." The special verdict questions, which the court instructed the jury to answer unanimously before considering the factors in sentencing, were for aggravating circumstances only (whether defendant knowingly or intentionally caused the death of the victim in connection with aggravated robbery, for pecuniary gain, or as a person on parole who knowingly possessed or had a firearm under his control or custody). The jury returned answers of "YES, we so find unanimously" on all three special verdict questions and imposed the death penalty.

While defendant asserts that special verdicts are generally not favored by the law in criminal cases, the use of special verdicts is usually upheld when the information sought is relevant to the sentence to be imposed. *United States v. Buishas*, 791 F.2d 1310, 1317 (7th Cir.1986); *United States v. Orozco–Prada*, 732 F.2d 1076, 1084 (2d Cir.), *cert. denied*, 469 U.S. 845,

105 S.Ct. 154, 83 L.Ed.2d 92 (1984); *see Johnson v. State*, 691 S.W.2d 619, 626 (Tex. Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). We recognized in *State v. Lafferty*, 749 P.2d 1239, 1260 n. 16 (Utah 1988), *on reconsideration*, 776 P.2d 631 (Utah 1989) (memorandum of decision), that certain circumstances in sentencing require special verdicts from the jury. Special verdicts may be helpful to a jury which must weigh the aggravating factors against the mitigating factors and will aid an appellate court in determining whether a sentence of death was properly imposed. *Id.* at 1260. We note that in the recent case of *State v. Tillman*, 750 P.2d 546, 563–65 (Utah 1987), the defendant argued that it was error not to use special verdicts requiring unanimity on each aggravating circumstance. There, we did not require the use of special verdicts so long as the jury unanimously found the defendant guilty of the capital crime charged beyond a reasonable doubt. *Tillman*, 750 P.2d at 565; *see also State v. Bishop*, 753 P.2d 439, 478–79 (Utah 1988) (jury unanimously found that defendant killed each of his victims in perpetration of an aggravated kidnapping).

◼ We hold that it was not error for the court to prepare for the jury special verdict questions seeking information that was relevant to the sentence to be imposed. The jury was instructed to answer the special verdict questions "prior to entering [its] verdict" as an "aid in [its] deliberations." Further, the jury was instructed that "[i]f the final vote of the jury members is 'No' or less than a unanimous 'Yes' as to any special verdict question, then you may not consider the elements of that individual question as aggravating circumstances." A jury must first determine the existence of aggravating factors before it can determine their weight. In the instant case, the court required a unanimous determination on each of three aggravating factors before they could be weighed against the mitigating factors. This procedure actually was a safeguard to defendant. There was no error in this procedure, even without accompanying special verdict questions on mitigation. Because

the court instructed the jury in meticulous compliance with the standards set forth in *State v. Wood* and section 76–3–207 and because the special verdict questions and instructions did not conflict with these standards, the jury was not misled to the conclusion that it could find aggravating circumstances only.

.

### III.

◼ Defendant next contends that he was improperly denied the opportunity to present evidence to the court that he was arbitrarily and capriciously charged with capital murder and that the death penalty was arbitrarily, capriciously, and unreasonably sought and imposed against him when compared with other cases in Utah. Prior to the sentencing proceeding, defendant filed a motion, requesting the court to determine whether the death penalty was discriminatorily being sought against him in violation of his equal protection rights under the state and federal constitutions. The court denied the motion after reviewing briefs submitted by both counsel and after hearing argument. The court held that defendant's motion was tantamount to requesting a proportionality hearing and that such was not required under the law. After the jury returned the death verdict, there was no review of the proportionality hearing.

We reject the contention that a case-by-case (comparative) proportionality review is required under the state and federal constitutions. *State v. Gardner*, 101 Utah Adv. Rep. 3, 11, (Jan. 31, 1989); *State v. Tillman*, 750 P.2d 546, 561–62 (Utah 1987); *see Pulley v. Harris*, 465 U.S. 37, 50–51, 104 S.Ct. 871, 879, 79 L.Ed.2d 29, 40 (1984). Defendant argues, however, that he is not seeking a "proportionality hearing" but rather a determination that there was an arbitrary and capricious decision by the State to charge his as a capital case when others similarly situated were not so charged. In turn, he petitioned the court for a determination that the death penalty was arbitrarily and capriciously imposed. Whatever title defendant would place on such a hearing, we

agree that it is the equivalent of a comparative proportionality hearing and is not required by our constitutions, statutes, or case law.

Defendant argued to the lower court that "[i]n order to make a determination as to whether or not the death penalty is being equally applied in this case, it will be necessary for the Court to determine the presence of a clear and intentional discrimination." To establish the presence of such discrimination in seeking and applying the death penalty, defendant argued that it was necessary

> to present evidence to the Court regarding situations where other persons similarly situated have not been subjected to the death penalty ... to offer evidence of similar [Utah] cases wherein the death penalty was never imposed ... as well as other cases in the Southern Utah area wherein the death penalty was never sought, though the matters were initially charged as first degree murder cases.

Clearly, this is a request for a comparative-type hearing within the reach of our decisions in *Gardner* and *Tillman:*

> Focus on the individual defendant and his acts is called for in section 76–1–104, not comparison with other criminals and their crimes. Each defendant is an individual, and each case is unique in its facts. Any attempt to draw broad comparisons between defendants or crimes calls for speculation as to why a particular defendant or crime was dealt with by that jury [or judge or prosecutor] in that particular fashion. The many factors which may influence a jury's [or judge's or prosecutor's] decision cannot be easily identified, let alone quantified.

*Gardner,* 101 Utah Adv. Rep. at 11.

We hold that under the facts of this case, the State could properly charge defendant with capital murder and seek the death penalty. In turn, the facts and aggravating circumstances allowed the jury to impose the sentence of death. There was no error in the court's denial of defendant's motion.

## IV.

Defendant asserts that the trial court improperly intervened by assisting the State when it moved for a mistrial. On the fourth day of the sentencing proceeding, the prosecutor made the motion based on an alleged misrepresentation by defense counsel concerning the appearance and testimony of a witness, Dr. Robert Howell:

> THE COURT: All right. The members of the jury have now left the room. Mr. Burns.
>
> MR BURNS: Yes, Your Honor. The State at this time would like to move for a mistrial based upon—
>
> THE COURT: Mr. Burns, are you—you want to move for a mistrial?
>
> MR BURNS: I want to move for a mistrial on the following basis.
>
> THE COURT: May I speak to you at the bench a minute, please.
>
> > (Whereupon, a discussion was had among Court and counsel at the bench, which was reported as follows:)
>
> THE COURT: The law says that if you move for a mistrial, that that invokes the double jeopardy standard, and he can't be retried.
>
> MR. BURNS: Well, if I move for a mistrial—I have a right to move for a mistrial if I want to if defense counsel misrepresents something. I have the right to have a psychologist here present, and I don't because—
>
> THE COURT: Well, you should have raised it before now. You should have had your psychologist here.
>
> MR. BURNS: I have raised it. I'll make my record.
>
> THE COURT: I wouldn't move for a mistrial.
>
> > (Whereupon, the following proceedings were had in open court, outside the hearing and the presence of the jury:)
>
> MR. BURNS: Based upon the Court's feeling with respect to the bodies of law in the state of Utah and the State moving for a mistrial, I'll withdraw that.

Defendant argues that he is entitled to a proceeding where the prosecutor is not "coached" by the trial court and asserts prejudice on grounds that a sentence of life

imprisonment would have resulted if the motion for mistrial had been granted.

We need not address the merits or validity of the the trial court's remarks on double jeopardy. Further, we cannot speculate as to prejudice by assuming that the court would have granted the motion if it were not withdrawn. The granting of a motion for mistrial is in the sound discretion of the trial court, which in the instant case had no obligation to grant the motion. *See Watkins & Faber v. Whiteley*, 592 P.2d 613, 616 (Utah 1979).

■ The trial court, with its inherent powers as the authority in charge of the trial, has broad latitude to control and manage the proceedings and preserve the integrity of the trial process. *State v. Sanchez*, 611 P.2d 721, 722 (Utah 1980); *Robinson v. Hreinson*, 17 Utah 2d 261, 266, 409 P.2d 121, 124 (1965); *Hanks v. Christensen*, 11 Utah 2d 8, 11, 354 P.2d 564, 566 (1960). In fulfilling this role, the trial court is "responsible for carrying [the trial] forward as efficiently and expeditiously as possible consistent with fairness and thoroughness in administering justice." *Hanks*, 11 Utah 2d at 11, 354 P.2d at 566.

■ In *State v. Curry*, 13 Wash.App. 741, 744, 537 P.2d 801, 803 (1975), the defendant claimed error on the part of the trial court in suggesting to the state the proper order of proof to lay a foundation for impeachment. The appellate court held that this advice to the prosecutor was not error, stating: "The court in conducting a trial is more than a mere umpire. It has discretion concerning such matters as order of proof." *Id.* at 744, 537 P.2d at 803. Similarly, we find no error in the instant case. The trial court was acting within the bounds of its inherent powers as the authority in control of the trial.

## V.

■ We next address defendant's contention that the trial court erred in admitting evidence of an uncharged and unconvicted criminal act as an aggravating circumstance in sentencing. Specifically, the State produced evidence that defendant, at the time of the commission of the instant crimes, was on parole for a felony and had in his possession or under his control or custody a firearm in violation of Utah Code Ann. § 76-10-503(2) (1978, Supp.1989). The court instructed the jury of the elements of that crime and that it must find, by special verdict, that the State proved each and every element beyond a reasonable doubt before it could consider the evidence of the crime as an aggravating factor.

We agree with a federal court of appeals that [t]he aim of the sentencing [trial] is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand. Counsel suggests that although a "criminal record" may be considered, crimes not passed on by a court are beyond the pale, but we see nothing to warrant this distinction.

*United States v. Doyle*, 348 F.2d 715, 721 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). Our own capital felony sentencing statute, section 76-3-207(2), provides in part:

(2) In these sentencing proceedings, evidence may be presented as to any matter the court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition, and any other facts in aggravation or mitigation of the penalty. Any evidence the court deems to have probative force may be received regardless of its admissibility under the exclusionary rules of evidence.

This provision "complies with the letter and spirit of the federal constitutional requirements for imposition of the death penalty. The only restriction on the admission of such evidence is that it must not be unfairly prejudicial to the accused." *State v. Lafferty*, 749 P.2d at 1259 (citations omitted).

In *Lafferty*, we addressed this issue in detail and prescribed the standards to be followed in capital sentencing trials when the prosecution introduces evidence of aggravating factors in the form of other crimes which have not resulted in convictions. We ultimately imposed these requirements:

> First, in jury cases, the sentencing jury must be instructed (i) as to the elements of the other crime regarding which the evidence was adduced and (ii) that it is not to consider evidence of that crime as an aggravating factor unless it first finds that the prosecution has proven all the elements of the crime beyond a reasonable doubt. Second, to assure that the sentencer's treatment of this aggravating factor can be distinguished on appeal from the treatment of other aggravating circumstances with respect to which no similar preliminary burden of proof rests on the prosecution, the sentencing body must specifically find whether the other crime was proven beyond a reasonable doubt.

*Lafferty*, 749 P.2d at 1260 & n. 16. In the instant case, the trial court, in instruction 18, followed these requirements in precise detail. By special verdict, the jury unanimously found that defendant committed the uncharged crime beyond a reasonable doubt. Under *Lafferty*, there was no error in allowing the jury to consider the evidence as an aggravating circumstance.

## VI.

■ Defendant argues that the jury was improperly influenced by the presence in the courtroom of Judge J. Harlan Burns, the former district judge for Iron County and the father of the prosecutor in this case. On the fourth day of the sentencing trial, Judge Burns attended the proceedings as a member of the public and observed the State's cross-examination of defendant. The trial court briefly acknowledged the presence of Judge Burns among the spectators and on the record welcomed him.

Defendant makes no specific claim of prejudice by this occurrence but asserts that the circumstances are so extraordinary as to require this Court's review. It may be true that Judge Burns is a prominent figure in Iron County and, perhaps, well-known and respected by some of the jurors in this case. It may also be true that he appeared in the courtroom to observe his son conduct a cross-examination and, perhaps, to lend moral support or even advice during a break in the trial. We certainly cannot speculate, however, on these matters or assume any improper influence upon the jury. With no claim of prejudice and nothing in the record to substantiate any harm or error, we can only conclude that defendant's claim of irregularity is without merit. Utah R.Crim.P. 30(a); Utah Code Ann. § 77–35–30(a) (1982).

## VII.

■ During closing argument, the State attempted to refute defendant's assertion that he was provoked by the victim's homosexual advances of placing his hand on defendant's thigh. After referring to testimony that the victim was not homosexual and would not be so inclined, the prosecutor argued:

> And let's say just for the sake of argument—let's throw all that out. Let's say he did. *I don't think you believe that, and I don't think you'll find that*, but let's just say—

> MR. SHUMATE [defense counsel]: Your honor, I must object at this point. Counsel is referring to his own opinion and what he thinks happened in the matter. It's improper under Rule 3.4 of the Rules of—

> THE COURT: I think he was drawing a permissible deduction from the evidence. I don't think he was saying what he believed, I think he was saying what he thinks they would find from the evidence. And I'm going to overrule the objection based on that.

> I will caution you, Counsel—and I'm sure you're aware—that you're not allowed to give your own opinion on matters.

MR. BURNS [the prosecutor]: Thank you, Your Honor.

THE COURT: All right. Thank you. (Emphasis added.) Defendant now asserts error on the ground that the prosecutor improperly implied personal knowledge of the facts and expressed a personal opinion on the evidence.

We recently articulated the standard by which we measure alleged prosecutorial misconduct:

> We look to see if the actions or remarks of counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, under the circumstances of the particular case, whether "the error is substantial and prejudicial such that there is a reasonable likelihood that in its absence, there would have been a more favorable result for the defendant."

State v. Gardner, Id.; State v. Tillman, 750 P.2d at 555. Application of these principles to the prosecutor's comments convinces us that there was no error.

 Counsel for both sides have "considerably more freedom in closing argument" and "a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom." Lafferty, 749 P.2d at 1255 (quoting State v. Valdez, 30 Utah 2d 54, 60, 513 P.2d 422, 426 (1973)). We agree that a prosecutor engages in misconduct when he or she asserts personal knowledge of the facts in issue or expresses personal opinion, being "a form of unsworn, unchecked testimony [which] tend[s] to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued." Lafferty, 749 P.2d at 1255-56; ABA Standards for Criminal Justice, § 3-5.8 (2d ed.1980). However, as the trial court ruled, the prosecutor was merely drawing a permissible deduction from the evidence and stating what he predicted the jury would find from the evidence. The remarks are properly understood to be permissible inferences. Further, because the comments are logically mere predictions of

what the jury would believe in its future deliberations, "we think it very unlikely that a juror would consider these statements to be factual testimony from the prosecutor—the evil to be guarded against—rather than a mere argument for the imposition of the death penalty based on the evidence presented." Lafferty, 749 P.2d at 1256.

In addition, the trial court specifically instructed the jury, in instruction 2, "[Y]ou may not consider as evidence statements of the attorneys or any hint or intimation of the truth or falsity of any fact or evidence made by the attorneys." We therefore find no error in the prosecutor's argument, and certainly no manifest and prejudicial error.

## VIII.

 Defendant next contends that manifest error occurred when one of the jurors conversed briefly with a witness for the State during a break in the course of the sentencing proceeding, thus, denying him a fair trial by an impartial jury. The trial court was notified that on the third day of the sentencing proceeding, between 8:30–9:00 a.m., Mr. Poulson, a member of the jury, was seen conversing with Mr. Slater, the owner of the laundromat and a witness for the State who testified later that morning. The court called the juror into the courtroom and questioned him in the presence of defendant and both counsel. The juror admitted to having a brief conversation that lasted about one minute. He did not know at the time that Mr. Slater would be a witness, and their exchange had no relation to the case or trial. Defense counsel also questioned the juror.

Defendant specifically waived any prejudice resulting from the conversation between the juror and the witness. In light of the death verdict returned by the jury, however, defendant now contends that the contact was prejudicial. After the juror was questioned by the court and counsel, the following occurred on record:

> MR. BURNS [the prosecutor]: Before you do—and briefly the State's position is that in an overabundance of caution,

I'd ask that Mr. Poulson be removed, and one of the alternate jurors put in his place.

THE COURT: Well, let's see what the defense has to say.

MR. SHUMATE [defense counsel]: I'm not sure we're at that point.

MR. BURNS: Thank you.

(Discussion off the record [between defendant and defense counsel].)

MR. SHUMATE: Your Honor, it's the defendant's position that we see no prejudice by the conversation—no problem with it.

As the Court has indicated, it's been a fact that Mr. Slater's testimony is not in dispute, and the conversation is harmless.

We do not intend to move for a mistrial, nor would we intend to request the Court that Mr. Poulson be removed from the panel.

THE COURT: I take it, then, that you're waiving any possible prejudice resulting from this conversation?

MR SHUMATE: Yes, we are, Your Honor. Is that correct, Mr. Parsons?

MR. PARSONS: Yes, sir.

THE COURT: All right. And, Mr. Parsons, you've discussed this with your counsel, and you feel satisfied with that decision?

MR. PARSONS: Yes, I do.

THE COURT: Do you have any questions you want to address to me regarding that?

MR. PARSONS: No.

THE COURT: Okay. Given that position by the defendant, and the fact they've waived any claim of prejudice, is it still the State's position that Mr. Poulson ought to be removed?

MR. BURNS: Based on those statements, Your Honor, I'll withdraw that.

We hold that "invited error" (if there were any) "is procedurally unjustified and viewed with disfavor, especially where ample opportunity has been afforded to avoid such a result." *Tillman,* 750 P.2d at 560–61. Based on the above facts, we cannot allow defendant to seek to vacate his sentence by alleging on appeal prejudicial error which was affirmatively, knowingly, and intentionally waived at the sentencing proceeding. To rule otherwise would permit a defendant in a criminal case to "invite" prejudicial error and implant it in the record as a form of appellate insurance against an adverse sentence.

Even analyzing the facts under the standards provided in *State v. Pike,* 712 P.2d 277, 279–81 (Utah 1985), we could find no error.

IX.

Finally, defendant argues that the trial court erred in refusing to instruct the jury on the "two reasonable hypotheses" theory. Defendant submitted to the court a requested jury instruction that if the evidence were susceptible of two reasonable constructions or interpretations, "one of which appears to be in favor of aggravation and the other appearing to be in favor of mitigation, it is [the jury's] duty under the law to adopt that interpretation which will admit of the view favoring mitigation and reject that which points to aggravation." The court refused the instruction "as unduly confusing as to burden of proof and in light of *State v. Larocco,* 665 P.2d 1272 (Utah 1983)."

In *Larocco,* we held, "An instruction on reasonable alternative hypothesis is not required, even when the evidence is solely circumstantial." *Larocco,* 665 P.2d at 1273. Thus, choosing not to give the instruction is squarely within the discretion of the court. Defendant argues, however, that in death penalty cases where the circumstances of the crime are essential to a determination by the jury of the character of the accused in sentencing, the instruction should be mandated "in order to give the jury guidance in the interpretation of physical evidence which can only be deemed as circumstantial." We disagree:

The prosecution's burden of proof in *any* criminal case, whether the evidence be direct or circumstantial, or a combination of both, is that of beyond a reasonable doubt. The use of the reasonable alternative hypothesis instruction is merely

one way of expressing that necessary burden of proof and there is no apparent reason to mandate that one, and only one, particular instruction be used by trial judges in conveying to the jury the meaning of that elusive phrase, "proof beyond a reasonable doubt." ... In any event, the "reasonable doubt" instruction given in the instant case clearly and appropriately informed the jury of the legal standard to be applied.

*State v. Eagle,* 611 P.2d 1211, 1213 (Utah 1980).

As discussed in part II of this opinion, the jury was clearly and appropriately instructed on the legal standard and burden of proof to be applied in a capital sentencing proceeding. *State v. Wood,* 648 P.2d 71, 83–84 (Utah 1982). We find no error in the trial court's refusal to give defendant's requested instruction on the two reasonable hypotheses theory.

Defendant's conviction and sentence are affirmed.

HALL, C.J., concurs.

STEWART, J., concurs in the result.

ZIMMERMAN, Justice: (Concurring)

I join in the opinion of Justice Howe. However, I write to comment on defendant's claim that section 76–5–202(1)(h) denies him due process and the right to a fair trial because it allows highly prejudicial evidence of his prior felony conviction to come before the jury during the guilt phase of a trial and that absent this defect, he might not have pleaded guilty. Justice Howe demonstrates that defendant did not preserve this issue adequately for appeal. I agree. But lest our disposition of this matter leave some question as to the merit of defendant's claim, I think it worthwhile to address the general proposition.

The factual premise of defendant's claim—that under section 76–5–202(1)(h), evidence of a prior unrelated crime can be introduced by the State as part of its case-in-chief before a defendant's guilt on the underlying murder charge is determined— is incorrect. A defendant charged with first degree murder under section 76–5–

202(1)(h) is entitled to have his or her guilt on the intentional homicide settled before the jury is informed of any prior convictions that provide the basis for raising the intentional homicide from second to first degree murder. *State v. Florez,* 777 P.2d 452, 458 (Utah 1989); *State v. James,* 767 P.2d 549, 557 (Utah 1989). This is the same procedure we have mandated in other cases where evidence of a prior unrelated crime is made an element of a current charge for the sole purpose of increasing the punishment. *See State v. Wareham,* 772 P.2d 960, 965 (Utah 1989); *State v. Bishop,* 753 P.2d 439, 498 (Utah 1988) (Zimmerman, J., concurring in the result, joined by Durham and Stewart, JJ.) (requiring bifurcated procedure for introduction of evidence of prior child sexual abuse convictions). If this procedure is followed, the constitutional claim raised by the defendant here need never be reached.

DURHAM, Justice: (Concurring Separately in the Result)

I join the result of the majority opinion and agree with the comments in Justice Zimmerman's opinion. I write separately to call attention to a problem in the majority opinion which merges without analysis the federal and state constitutional questions of "proportionality review."

It is true that the United States Supreme Court has decided that no comparative proportionality review is required under the federal constitution. *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). This Court, however, has never analyzed the question under the Utah Constitution. The majority opinion in *State v. Tillman,* 750 P.2d 546, 562 (Utah 1987), did say, "We also reject the contention that a case-by-case (comparative) proportionality review is required under the federal or the Utah Constitution," and I now acknowledge my oversight in failing to call attention to this problem in my dissent in that case. A review of the cases cited as support by *Tillman* discloses that the specific issue of proportionality review under the Utah Constitution has never been treated by this Court, nor was it treated in *Tillman.* I

now lodge my objections to merging federal and state constitutional questions, without analysis, in this fashion. I do not advocate answering the question under state constitutional principles in this case because the appellant did not cite or rely on the Utah Constitution in his brief. We should be scrupulous, however, about language which confuses federal and state constitutional principles, for many reasons, and I take issue with the majority opinion's use of such language here.