**STATE of Utah, Plaintiff and Appellee,**

v.

**John Albert TAYLOR, Defendant and Appellant.**

**No. 900022.**

Supreme Court of Utah.

Oct. 10, 1991.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

Martin V. Gravis, Ogden, for defendant and appellant.

HOWE, Associate Chief Justice:

Defendant John Albert Taylor appeals his conviction of first degree murder, a capital felony in violation of Utah Code Ann. § 76–5–202, and his death sentence. Under that statute, criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under specified circumstances. The trial judge sitting without a jury found that defendant committed the homicide while engaged in the commission of or an attempt to commit or in flight after the commission of or attempt to commit rape of a child and/or object rape of a child and/or sexual abuse of a child and/or child abuse and/or burglary and/or sodomy on a child. Utah Code Ann. § 76–5–202(1)(d).

1. Rule 52(a) of the Utah Rules of Civil Procedure applies in criminal cases by virtue of Utah Rule of Criminal Procedure 26(7). *See State v.*

## I. FACTS

On June 23, 1989, Charla King was found dead by her mother, Sharron King, in her mother's bed. Charla was naked, with her arms and legs spread apart as if she had just had intercourse. A telephone cord was tied tightly around her neck. Her mouth was stuffed with her underwear. Her head was wrapped with her mother's nightgown. Her face was swollen, distorted, and black. Charla would have turned twelve years old the next day.

An autopsy determined the cause of death to be strangulation by a telephone cord. She was also injured by an object that was inserted into her vagina and her rectum. The injury to her rectal tube was severe and caused acute hemorrhaging in the soft tissue approximately 4–5¼ inches inside her body from the rectal opening. The evidence indicated that the object causing the injury was likely smooth and firm like a human penis, fingers, or a dildo. The injury to her vagina caused a torn hymen and bruising around the entire interior consistent with the insertion of a penis.

## II. EVIDENCE SUFFICIENT TO SUPPORT FINDING OF GUILT

■ Defendant's first assignment of error is that there was insufficient evidence of first degree murder to find guilt beyond a reasonable doubt. When reviewing the findings of a trial judge sitting without a jury, this court will overturn a guilty verdict only if it is clearly erroneous. *State v. Walker,* 743 P.2d 191, 192–93 (Utah 1987). The basis of this standard is rule 52(a), Utah Rules of Civil Procedure, "Findings by the court": [1]

> In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the

*Goodman,* 763 P.2d 786 (Utah 1988); *State v. Walker,* 743 P.2d 191 (Utah 1987); Utah R.Civ.P. 81(e).

trial court to judge the credibility of the witnesses.

Three or four days prior to the murder, defendant stayed with his sister Laura, who lived in the same apartment complex as the victim. The purpose of the visit was to tattoo her husband and defendant's half brother. A neighbor saw defendant watching the victim and a friend in a nearby park a few days prior to the murder. One neighbor heard a child screaming shortly after the victim was last seen alive. Another neighbor saw defendant at the foot of the staircase outside the building where the victim lived shortly before she was found dead. Defendant had been left alone in his sister's apartment the afternoon of the crime.

Immediately before the body of the victim was discovered, defendant told Laura that he wished to go to his other sister's home. She thought his departure was sudden and unexpected, since he had not finished the tattoo work. Defendant commented to her as the paramedics were removing the victim's body from the apartment, "When they catch him, they will just slap him on the hand and let him plead insanity; give him three to five years and let him go." Moreover, Laura thought he showed an unusual interest in the murder. She informed the police of his behavior, and he became a suspect.

Defendant vehemently denied that he had ever been in the victim's apartment. When he was confronted with the fact that his fingerprints were found on a telephone in the apartment, he recanted and confessed that he had burglarized the apartment but that no one was present at the time. He further admitted that he picked up the telephone from which the cord used to strangle the victim was cut. Knives that belonged to him were found in his sister's home. One of the knives could have made the cut on the telephone cord. Defendant changed his appearance from the date of his arrest, June 28, to his trial in November 1989. While awaiting trial, he called Laura and told her to say that she was at her apartment with defendant at the approximate time of the murder. In fact, she

arrived thirty minutes after that time. He told an inmate in jail that he had killed a little girl and that it was an accident.

Upon full review of the record, we find there is sufficient evidence supporting the trial court's finding defendant guilty of first degree murder. The finding is not clearly erroneous.

### III. ALLEGED ERRORS IN THE PENALTY PHASE

At the penalty phase of the trial, evidence was introduced that when defendant was a juvenile, he committed the following criminal acts for which he was never charged or convicted: (1) sexual intercourse with his younger sister against her will when she was twelve or thirteen years of age; (2) burglary of the home of Bobbi Thomas; and (3) sexual abuse of a six-year-old neighbor girl. Evidence was also introduced of his convictions of burglary and of carrying a concealed weapon, which occurred after he became an adult.

■ Defendant assigns as error the admission of his unconvicted criminal acts, because they allegedly occurred about fifteen years prior to his trial. He contends that their admission deprived him of due process of law under the United States Constitution and the Utah Constitution because the "lapse of time clouds people's memories and makes it difficult, if not impossible, to find witnesses to the alleged occurrences." While he is correct that a substantial lapse of time may raise due process concerns, he has not demonstrated that he was prejudiced by the lapse of time. All three of the alleged victims personally appeared and testified and were subject to cross-examination. One of his sisters testified that he raped her three times. Her testimony was corroborated by another sister, who knew of the incidents because their parents had placed defendant in a sex offender program at the Florida State Hospital, where he resided for approximately four years. Defendant makes no claim that there were other witnesses whom he could have called but who were unavailable.

Bobbi Thomas testified that in 1974, defendant temporarily resided with his grandmother, who was Thomas's neighbor. One day, Thomas's daughter came home from school and found defendant inside their home. When first confronted, Taylor denied the burglary. However, four years later, he wrote Thomas and apologized for what he had done. Again, he makes no claim that there were any other witnesses with knowledge of this incident who were unavailable.

The victim of the child sex abuse testified that when she was six years old, Taylor asked her to come over to his grandparents' home and look at his trains. They went into the garage, where defendant pulled down her pants and placed his hand "down there." He exposed his genitals to her and masturbated. When the victim began to cry, defendant stopped. She did not tell anyone about the incident until recently. Once again, it is not claimed that there were any other witnesses who might have been called to testify. As with the other criminal acts discussed above, there is no indication of any tactical advantage gained by the prosecutor in presenting this evidence because of the long lapse of time.

We have previously held that in the penalty phase, any relevant aggravating and mitigating circumstances may be admitted. *State v. Lafferty*, 749 P.2d 1239, 1259 (Utah 1988), *aff'd on reh'g*, 776 P.2d 631 (Utah 1989); Utah Code Ann. § 76-3-207(2). "The only restriction on the admission of such evidence is that it must not be unfairly prejudicial to the accused." *Lafferty*, 749 P.2d at 1259 (citing *Gregg v. Georgia*, 428 U.S. 153, 204, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859, 891 (1976)). We further added that the sentencing body "may not rely on other violent criminal activity as an aggravating factor supporting the death penalty unless it is first convinced beyond a reasonable doubt that the accused did commit the other crime." *Lafferty*, 749 P.2d at 1260.

First, in jury cases, the sentencing jury must be instructed (i) as to the elements of the other crime regarding which the evidence was adduced and (ii) that it is not to consider evidence of that crime as an aggravating factor unless it first finds that the prosecution has proven all the elements of the crime beyond a reasonable doubt. Second, to assure that the sentencer's treatment of this aggravating factor can be distinguished on appeal from the treatment of other aggravating circumstances with respect to which no similar preliminary burden of proof rests on the prosecution, the sentencing body must specifically find whether the other crime was proven beyond a reasonable doubt.

*Id.*

We recently followed the standards set out in *Lafferty* in *State v. Parsons*, 781 P.2d 1275, 1283 (Utah 1989). The issue in *Parsons* was identical to our present case: whether the trial court erred in admitting evidence of an uncharged and unconvicted criminal act as an aggravating circumstance in sentencing. We determined that the primary goal in the sentencing phase is to acquire a thorough acquaintance with the character and history of the person before the court. *Id.* at 1282 (quoting from *United States v. Doyle*, 348 F.2d 715, 721 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965)). We further added that our own sentencing statute specifically allows for evidence of a defendant's "character, background, history, mental and physical condition, and any other fact in aggravation or mitigation of the penalty ... regardless of its admissibility under the exclusionary rules of evidence." *Id.*; Utah Code Ann. § 76-3-207(2).

The trial judge found beyond a reasonable doubt that defendant committed the foregoing uncharged criminal acts. Other evidence was presented regarding an alleged sexual molestation of young girls at a public swimming pool. The judge found that although there was compelling evidence that the molestations took place, he was not satisfied beyond a reasonable doubt. Therefore, he did not consider those acts in his determination of the death penalty. We conclude that defendant's due process rights were not violated in the introduction and receipt of evidence of the three uncharged criminal acts.

Defendant next contends that Utah Code Ann. § 78–3a–44 (1990) prohibits the introduction of the conviction or evidence of juvenile offenses in a capital murder proceeding. Section 78–3a–44 provides in part:

(2) An adjudication by a juvenile court that a child is within its jurisdiction under § 78–3a–16 shall not be deemed a conviction of a crime, except in cases involving traffic violations; no such adjudication shall operate to impose any civil disabilities upon the child nor to disqualify the child for any civil service or military service or appointment.

(3) Neither the record in the juvenile court nor any evidence given in the juvenile court shall be admissible as evidence against the child in any proceedings in any other court, with the exception of cases involving traffic violations.

■ Defendant is partially correct in that juvenile offenses are not to be introduced in the guilt phase of a criminal trial. *State v. McClendon*, 611 P.2d 728, 729 (Utah 1980). However, juvenile offenses are relevant in the sentencing phase of an adult's criminal conviction. *Id.* Even though *McClendon* was not a capital case, the rationale for the decision is relevant in a capital case. The sentencing in a criminal case should be tailored to the particular defendant and should serve the interests of society as well. *Id.* The interests of society include halting a pattern of law breaking and revealing the defendant's previous responses to rehabilitation efforts. *Id.* Therefore, prior offenses, even though committed while a defendant was a minor, are particularly relevant in the sentencing phase. Moreover, our sentencing statute for a capital felony imposes no restriction as to when the alleged prior crime took place for purposes of admission during this phase. *See* Utah Code Ann. § 76–3–207. Thus, we hold that the analysis in *McClendon* should be extended to allow previous juvenile offenses, either adjudicated or unadjudicated, to be brought in at the penalty phase of a capital case. The procedural safeguard set out in *Lafferty* requiring that uncharged and unadjudicated criminal acts relied on as aggravating factors supporting the death penalty be proved beyond a reasonable doubt, along with the "unfairly prejudicial" standard, will ensure constitutional protection. In view of our sentencing statute and our decision in *McClendon*, there was no error in the admittance of juvenile offenses in the sentencing phase.

■ Finally, defendant contends that his convictions of burglary and of carrying a concealed weapon should not have been introduced as aggravating circumstances at the penalty phase because there was no evidence that they were violent crimes involving threat or use of force. The cases cited by him for this proposition do not apply here because they involve the introduction of a prior burglary to establish the aggravating circumstance that the defendant was previously convicted of a violent felony. That was not done here. Defendant could be confusing our sentencing statute, section 76–3–207(2), with section 76–5–202(1)(h), which provides that criminal homicide constitutes first degree murder if the actor intentionally or knowingly causes the death of another when the actor has previously been convicted of a felony involving the use or threat of violence to a person. Section 76–5–202(1)(h) enhances what would otherwise be second degree murder to first degree murder. Defendant had already been found guilty of first degree murder under section 76–5–202(1)(d), and his previous convictions were introduced under section 76–3–207(2) as aggravating factors during the *penalty* phase. Whether those crimes were violent is irrelevant.

As previously mentioned, our sentencing statute specifically allows for evidence of a defendant's "character, background, history, mental and physical condition, and any other facts in aggravation or mitigation of the penalty . . . regardless of its admissibility under the exclusionary rules of evidence." Utah Code Ann. § 76–3–207(2). The statute further adds that "aggravating circumstances shall include those as outlined in 76–5–202." Thus, the underlying factors of aggravation found in the guilt phase may be considered in the sentencing phase. *State v. Gardner*, 789 P.2d 273, 285 (Utah 1989), *cert. denied,* — U.S.

——, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). "Evidence of other aggravating factors is not prohibited 'as long as that information is relevant to the character of the defendant or the circumstances of the crime.'" *Id.* (quoting *Barclay v. Florida,* 463 U.S. 939, 967, 103 S.Ct. 3418, 3433, 77 L.Ed.2d 1134, 1154 (1983)).

Moreover, in *State v. Parsons,* 781 P.2d 1275 (Utah 1989), a death penalty case, the state produced evidence in the sentencing phase that at the time of the commission of the crimes, the defendant was on parole for a felony and that he had in his possession a firearm in violation of Utah Code Ann. § 76–10–503(2). *Id.* at 1282. "The court instructed the jury of the elements of that crime and that it must find ... that the State proved each and every element beyond a reasonable doubt before it could consider the evidence of the crime as an aggravating factor." *Id.* We held that this "complies with the letter and spirit of the federal constitutional requirements." *Id.* (quoting *State v. Lafferty,* 749 P.2d at 1259). Therefore, *Parsons* extends the *Lafferty* "beyond a reasonable doubt" standard to nonviolent crimes in the death penalty context. As a result, we cannot adopt defendant's argument that aggravating factors should be limited to crimes involving the use or threat of violence. It is clear from our sentencing statute and *Parsons* that any and all evidence of adjudicated and unadjudicated crimes may be introduced provided they have been or are proved beyond a reasonable doubt. Therefore, defendant's claim of error has no merit.

## IV. CONCLUSION

We have canvassed the record and find no error in either the guilt phase or the penalty phase of the trial. In sentencing defendant to death, the trial judge relied on the statutory aggravating factors of the rape of the victim (both vaginally and anally) and the burglary by which he gained entrance to the victim's home. The judge found defendant's prior convictions for burglary and for carrying a concealed weapon to be aggravating factors and

found as additional aggravating factors, the three criminal acts discussed above for which he has not been charged or convicted. The judge concluded that when defendant was a free person, he was unable to avoid criminal activity. He found that none of the statutorily specified mitigating circumstances, Utah Code Ann. § 76–3–207(2)(a)–(g), had been presented by any evidence. He noted that there was some evidence that defendant had an unfortunate childhood; however, that evidence was "sketchy" and "not very compelling."

This court has offered guidance to the sentencer in regard to aggravating and mitigating factors:

> After considering the totality of the aggravating and mitigating circumstances, you must be persuaded beyond a reasonable doubt that total aggravation outweighs total mitigation, and you must further be persuaded, beyond a reasonable doubt, that the imposition of the death penalty is justified and appropriate in the circumstances.

*State v. Wood,* 648 P.2d 71, 83 (Utah 1981).

Referring to *Wood,* the judge concluded that after considering the totality of the aggravating and mitigating circumstances, he was persuaded beyond a reasonable doubt that the total aggravation clearly outweighed the total mitigation. He indicated that he was further persuaded beyond a reasonable doubt that the imposition of the death penalty was justified and appropriate under all of the circumstances.

Defendant's conviction and sentence are affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.